UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PENNY L. CHRISTIAN,**
  **Plaintiff,**

                Civil Action 2:16-cv-398
 v.              Judge James L. Graham
                Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF**
**SOCIAL SECURITY,**

  **Defendant.**

## REPORT AND RECCOMENDATION

Plaintiff, Penny L. Christian, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental social security income ("SSI") and disability insurance benefits ("DIB"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply in Support (ECF No. 11), and the administrative record. (ECF No. 8.) For the reasons that follow, the undersigned **RECCOMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I. BACKGROUND

Plaintiff filed her application for benefits on February 17, 2012 alleging disability beginning February 11, 2000.[1] (R. at 210–19.) Plaintiff's applications were denied initially on July 2, 2012 and upon reconsideration on January 11, 2013. (R. at 111–17, 121–32.) Plaintiff

---

[1] Although the ALJ stated Plaintiff's alleged onset date was July 1, 198, Plaintiff's applications reflect that she alleged disability as of February 11, 2000. (R. at 16, 210, 214, 242.)

1

sought a *de novo* hearing before an administrative judge. Administrative Law Judge Shaughnessy ("ALJ") held a hearing on October 30, 2014, at which Plaintiff, represented by counsel, appeared through video and testified. (R. at 30–56.) Mark Pinti, Ph. D., a vocational expert, also appeared and testified at the hearing. On December 18, 2014, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On March 20, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In her Statement of Errors, Plaintiff raises two issues. (Plaintiff's Statement of Errors ("SOE") at 1, ECF No. 8.) Plaintiff asserts that although the ALJ found that Plaintiff's carpal tunnel syndrome constituted a severe impairment, the ALJ's residual functional capacity ("RFC") did not include corresponding work related manipulative limitations. (*Id.*) Likewise, Plaintiff contends that the ALJ inappropriately relied on the vocational expert's testimony because the controlling hypothetical incorporated the ALJ's RFC and was therefore inadequate. (*Id.*)

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff testified that she lives alone, has a driver's license, and drives when she has a doctor's appointment. (R. at 34.) Plaintiff testified that she graduated high school. (R. at 35.) In 2011, Plaintiff worked as a home health aide. (*Id.*) She testified that she was unable to continue working because she is in pain. "I can't really use my hands. They get numb and tingling. I've got to have surgery on my right hand this coming month. And my left is messed up, too. My neck, my back, my knees and feet. Pretty much basically everything." (R. at 36.)

2

When asked what Plaintiff is able to do with her hands she testified that she "can scratch and I can hold things for a little bit, but then they – I get real sharp shooting pains and stuff down to my fingers.  And they, like, burn and stuff."  (R. at 41.)

When asked about her typical day, Plaintiff testified that she watches the news, cleans her house, does a little bit of cooking, washes the dishes, does laundry, and she occasionally shops for groceries.  (*Id.*)  She testified that she can sit for "maybe a half hour" at a time before she would need to lie down.  Plaintiff further testified that she cannot have a sedentary job where she would use her hands because she is not able to feel very well with her hands and she drops things.  (R. at 43.)  She also testified that she is unable to work the buttons on a button up shirt or open a jar.  (R. at 44.)

## B.  Vocational Expert

The vocational expert ("VE") testified at the administrative hearing that Plaintiff's past relevant employment as a nurse assistant was a medium and semiskilled position and her position as a home health aide was also a medium and semiskilled position.  (R. at 50–51.)

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE.  (R. at 51–52.)  Based on Plaintiff's age, education, work experience, and residual functional capacity, the VE testified that a similarly situated hypothetical individual could not perform Plaintiff's past work, but could perform approximately the requirements of representative occupations such as housekeeping cleaner, of which there are 4,000 jobs regionally and 300,000 jobs nationally; machine tender, of which there are 2,500 jobs regionally and 175,000 jobs nationally; and laundry or garment folder, of which there are 600 jobs regionally and 70,000 jobs nationally.  (*Id.*)

### III.    MEDICAL RECORDS[2]

#### A. Dr. Patrick Ball

Plaintiff began to see Dr. Patrick Ball on May 6, 2011, after not visiting him for years. (R. at 431.)  According to Dr. Ball's notes, Plaintiff reported back and neck pain but did not complain of wrist pain or other pain related to carpal tunnel syndrome.  (R. at 431.)  On August 8, 2011, Dr. Ball noted "[n]umbess in arms and hands worse on the right" and "[h]as decreased grip bilaterally but symmetrical."  (R. at 445–46.)  Dr. Ball listed six different diagnoses in his notes but did not list carpal tunnel syndrome after this appointment.  (R. at 446.)  At an appointment with Dr. Ball on September 22, 2011, Plaintiff reported pain and stated that the "pain pills don't seem to be helping as much."  (R. at 440.)  However, Dr. Ball noted that Plaintiff's toxicity screen showed an absence of the oxycodone she was prescribed.  (*Id.*)  When asked about why she was not taking the prescribed pain medication, Plaintiff reported that she was working 96 hours a week and that she cannot take the medication when working.  (*Id.*)

On September 22, 2011, a nerve conduction velocity electromyography test ("NVC EMG") was performed.  (R. at 401–02.)  The exam revealed "bilateral distal median neuropathy that is mild to moderate on the right and mild on the left side."  (R. at 401.)  The clinical history revealed that Plaintiff underwent an EMG in 2009 where evidence of left carpal tunnel syndrome and left C6-7 probable radiculopathy were found.  (*Id.*)

On October 21, 2011, Plaintiff reported that she was experiencing "terrible pain."  (R. at 452.)  After reviewing her chart, Dr. Ball noted that Plaintiff "does have some findings but seems out of proportion to her pain I brought this up.  I told her [that I] felt uncomfortable writing pretty strong narcotics with rather scant findings on all of her tests.  She is insistent that her pain

---

[2] The Court limits its analysis of the medical evidence to the issues raised in Plaintiff's Statement of Errors, namely the ALJ's determinations with regard to Plaintiff's carpal tunnel syndrome.

4

is severe." (*Id.*) Dr. Ball also documented "positive Tinel's bilaterally." (R. at 454.) Dr. Ball did not provide any limitations.

**B. State Agency Medical Consultant Dr. James Cacchillo**

State agency medical consultant Dr. James Cacchillo reviewed Plaintiff's records on June 28, 2012 as part of the initial determination on her claim. (R. at 58–68, 70–80.) Dr. Cacchillo assessed severe medical impairments of "Disorders of Back-Discogenic and Degenerative" and "Essential Hypertension." (R. at 63, 75.) Dr. Cacchullo determined that Plaintiff's RFC permitted the ability to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, frequently climb ramps/stairs, occasionally climb ladders/ropes/scaffolds, frequently stoop, occasionally kneel, frequently crouch, and occasionally crawl, and also Plaintiff should avoid concentrated exposure to hazards. (R. at 65–67, 77–79.) Dr. Cacchillo specifically addressed Plaintiff's alleged carpal tunnel by finding, "there is no evidence in available MER of persistent weakness in hands or abnormal physical exam ([i.e.] weakness, atrophy, dec[.] grip, etc[.]) that would cause handling/manipulative problems." (R. at 66, 78.)

**C. Dr. Teresita Cruz**

Dr. Teresita Cruz evaluated Plaintiff's physical RFC, repeating Dr. Cacchillo's earlier assessment. (R. at 90–92, 105–107.) She noted Plaintiff "alleges carpal tunnel-EMG 9/11 with mild-mod right and mild left-there is no evidence in available MER of persistent weakness in hands or abnormal physical exam ([i.e.] weakness, atrophy, dec grip, etc) that would cause handling/manipulative problems." (R. at 92.)

## IV.     ADMINISTRATIVE DECISION

On December 18, 2014, the ALJ issued her decision. (R. at 14–24.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantially gainful activity since July 1, 1985, the alleged onset date of the disability. (R. at 16.) The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, carpal tunnel syndrome, asthma, and major depressive disorder. (R. at 17.)

The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb ladders, ropes or scaffolds; can kneel and crawl occasionally; should avoid concentrated exposure to hazards; and is limited to tasks that are routine and static in nature.

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

(R. at 19.)  In reaching this determination, the ALJ found that the objective medical evidence in the record inconsistent with Plaintiff's subjective allegations of pain and limitation.

Specifically, the ALJ reasoned that although Plaintiff "alleged debilitating back, neck, foot, and essentially, her entire body, pain, physical examinations of record have remained relatively unremarkable." (R. at 20.)  Moreover, the ALJ found Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms lacked credibility. (R. at 22.)  For example, the ALJ noted that Plaintiff's allegations about the severity of her physical and mental impairments are inconsistent with her own reports about her activities of daily living.  "The claimant testified that she has pain in her entire body daily and that she can only stand for 10-15 minutes and can lift a maximum of 13 pounds, but the evidence showed that she took care of her grandchild, who was three-years-old in 2012, and would certainly weigh more than 13 pounds." (R. at 22.)  The ALJ further noted that Plaintiff was prescribed Oxycodone, but it did not show up in her toxicity screen, which she stated was because she could not take it at work, another example of how her complaints of pain are out of proportion with her actions. (R. at 22, 440.)  Furthermore, the ALJ noted that Plaintiff's doctor told her that he felt uncomfortable prescribing strong narcotics with rather scant findings on tests and that her missed appointments and narcotic history caused the doctor to raise "red flags," all of which to suggest that Plaintiff is not as limited as alleged. (R. at 22.)

The ALJ gave "great weight" to the State agency medical consultants' physical assessments, explaining that the assessments are generally consistent with the medical evidence in concluding that the claimant is capable of performing a light residual functional capacity, and that she is limited to tasks that are routine, repetitive, and static in nature." (R. at 22–23.)

In regards to Plaintiff's complaints in relation to carpal tunnel syndrome, the ALJ found as follows:

> The claimant was also diagnosed with carpal tunnel syndrome, but it was found to be negative for tinel or phalen signs bilaterally. Several records showed that it was worse on the right side, but she was given bilateral wrist splints to wear in order to ease the carpal tunnel syndrome pain.

(R. at 21.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs existing in the national and local economy. She therefore concluded that Plaintiff was not disabled under the Social Security Act.

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial

8

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In her Statement of Errors, Plaintiff argues that the ALJ's formulation of her RFC failed to include limiting effects related to her carpal tunnel syndrome and that as a result of the incomplete RFC, the VE's testimony was inadequate in fully accounting for Plaintiff's limitations.  (SOE at 1.)

### A. The ALJ did not err by failing to account for Plaintiff's carpal tunnel syndrome in the RFC

In her first assignment of error, Plaintiff argues that the ALJ inadequately formulated her RFC because she failed to include limiting effects relating to her carpal tunnel syndrome. Plaintiff contends that because the ALJ found Plaintiff's carpal tunnel to be a "severe impairment it must significantly limit the physical ability to perform basic work activities such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."  (SOE at 6.)  As a result, Plaintiff asserts that "the ALJ's lack of any corresponding work related manipulative activities limitations . . . in Plaintiff's RFC assessment . . . renders the ALJ's RFC determination unsupported by substantial evidence."  (*Id.*)

9

As a threshold matter, Plaintiff incorrectly argues that because an impairment is found 'severe' at step two, the ALJ must include that impairment in the RFC. A determination of 'severe' at step two is a "*de minimus* hurdle . . . intended to 'screen out totally groundless claims." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (citing *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe." Soc. Sec. Rul. 1996 WL 374181, at *1 (1996). Accordingly, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Little v. Comm'r of Sec. Sec.*, No. 2:14-cv-532, 2015 WL 5000253, at *14–15 (S.D. Ohio Aug. 24, 2015) (holding ALJ "was not obligated . . . to include any additional limitations that specifically addressed Plaintiff's IBS simply because he determined that her IBS was a severe condition at step two.").

Rather, a plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at

10

*10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Additionally, the ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(d). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

In her written decision, the ALJ found that Plaintiff had the RFC to perform light work, except she could not climb ladders, ropes, or scaffolds; could kneel and crawl occasionally; needed to avoid concentrated exposure to hazards; and was limited to tasks that were routine, repetitive, and static in nature. (R. at 19.) To reach this determination, the ALJ properly considered the objective medical findings, the medical source opinions, and Plaintiff's treatment history, daily activities, and subjective complaints. (R. at 16–22.)

Plaintiff has not shown that the ALJ erred by not including limitations in the RFC on reaching, handling/fingering, and lifting.  Plaintiff points to her own testimony at the ALJ hearing regarding pain, numbness, tingling, weakness, and difficulty using her hands to demonstrate that she has difficulties using her hands.  (SOE at 6–7.)  Plaintiff's own subjective complaints, however, are insufficient.  *See* 42 U.S.C. § 423(d)(5)(A) (subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability").  Moreover, substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints of disabling symptoms and limitations lacked credibility.  (R. at 20.)

Plaintiff's medical records provide substantial evidence to support the ALJ's  RFC.  The medical records do not provide objective evidence that Plaintiff's RFC needed to include further limitations for her carpal tunnel syndrome.  Plaintiff argues that her decreased grip strength, indicated on August 2011, is objective medical evidence that more limitations are necessary.  Examination findings related to Plaintiff's upper extremities however generally came back normal, including normal strength, coordination, and range of motion.  (R. at 356, 362–63, 364, 432–33, 437–38, 441–42, 445–46, 449, 453–54, 547–58, 462, 465–66, 469–70, 479, 486–87, 492–93, 529, 534–35, 538–39, 541, 544, 562–63, 567, 570, 575–76, 601–03, 609, 618–19.)

On October 4, 2011, Plaintiff tested negative for "tinel or phalen bilaterally."  (R. at 449.)  In response to this objective evidence, Plaintiff argues that "[w]hile the ALJ's indication of negative tinel and phalen signs of October 4, 2011, is accurate, the ALJ ignores positive tinels documented later that same month on October 21, 2011. . ."  (SOE at 11.)  While Plaintiff did test positive for tinels on October 21, 2011, Dr. Ball did not assess carpal tunnel syndrome at that visit.  (R. at 454.)  Dr. Ball rather reported in his notes that "[s]he does have some findings but

seems out of proportion to her pain I brought this up. I told her [that I] felt uncomfortable writing pretty strong narcotics with rather scant findings on all of her tests."  (R. at 452.)

Moreover, no doctor imposed limitations on Plaintiff due to carpal tunnel syndrome. *Poppinger v. Colvin*, No. 2:14-cv-492, 2015 WL 1245975, at *6 (S.D. Ohio Mar. 18, 2015) (holding substantial evidence supported ALJ's determination that the record lacked sufficient objective or credible evidence of any functional limitations posed by claimant's incontinence where treating urologist did not state that claimant's incontinence functionally limited her ability to work).  Furthermore, Plaintiff's reported daily activities also support the ALJ's RFC determination.  Plaintiff's testimony revealed inconsistency in the limitations she requests and her daily activities she; cooks, cleans, does laundry, drives, and takes care of her grandson.  *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *cf. Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain.").

Because the Undersigned finds that the ALJ's decision to not include limitations in the RFC formulation on reaching, handling/fingering, and lifting was supported by substantial evidence, it is **RECCOMENDED** that Plaintiff's first contention of error be **OVERRULED**.

### B. The Vocation Expert based his hypothetical on all necessary limitations.

In her second assignment of error, Plaintiff argues that the Vocational Expert's testimony was inappropriate because the controlling hypothetical given to the Vocation Expert did not fully account for Plaintiff's limitations.

It is "well established an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."

*Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 438 (6th Cir. 2010) (quoting *Casey v. Sec'y of Health and Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) (quoting *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010); *see also Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 118 (6th Cir. 2010) ("If the ALJ relies on a vocational expert's testimony in response to a hypothetical to conclude that the claimant is capable of performing a number of jobs, the hypothetical question must describe the claimant in all significant, relevant respects."). "[A]lthough a hypothetical question need not incorporate a listing of the claimant's medical conditions, the vocational expert's testimony, to be reliable, must take into account the claimant's functional limitations, *i.e.*, what he or she 'can and cannot do.'" *Infantado v. Astrue*, 263 F. App'x 469, 476 (6th Cir. 2008) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632-33 (6th Cir. 2004)).

Plaintiff's second contention of error necessarily fails based on the Undersigned's determination that the ALJ did not err in her RFC formulation. Plaintiff contends that the hypothetical upon which the VE based his testimony was incomplete because it does not account for limitations on reaching, handling/fingering, and lifting. (SOE at 15–16.) Because the Undersigned finds that the VE based his testimony on a hypothetical that accurately portrays Plaintiff's physical and mental impairments, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

I. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECCOMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

II. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he or she may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.

Date: July 25, 2017					/s/ *Elizabeth A. Preston Deavers*
						ELIZABETH A. PRESTON DEAVERS
						UNITED STATES MAGISTRATE JUDGE